IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-mc-00092-MSK-KLM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Petitioner,

v.

CENTURA HEALTH,

    Respondent.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on the **Application for an Order to Show Cause Why an Administrative Subpoena Should Not Be Enforced** [#2][1] (the "Motion"), filed by Petitioner Equal Employment Opportunity Commission (the "EEOC"). A Response [#12] in opposition to the Motion was filed by Centura Health ("Centura" or "Respondent"). A hearing on the Motion was held on August 6, 2014. *Minute Entry* [#13]. On August 7, 2014, Respondent filed a Supplement [#14] to its Response [#12], and the EEOC subsequently filed a Response [#19] to the Supplement [#14]. The Court has reviewed the entire case file and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#2] is **DENIED**.

---

[1] "[#2]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

## I. Background

In short, the EEOC asks the Court to require Centura to respond to the subpoena at issue in this case (the "Subpoena"). The material facts underlying the EEOC's purported service of the Subpoena are undisputed. Between February of 2011 and January of 2012, the EEOC received four charges of discrimination against Centura filed by one current and three former employees. *Petitioner's Ex. 1* [#3-1] ¶¶ 1-4. In the course of its investigation of Centura in connection with these charges, the EEOC issued the Subpoena on November 8, 2012, to "Michelle M. Lucero, Esq., Vice Present-Employee Relations, Centura Health, 188 Inverness Drive West, Suite 500, Englewood, CO 80112." *Attach. 22 to Petitioner's Ex. 1* [#3-23] at 1. The EEOC chose to attempt to serve Ms. Lucero by certified mail. *Id.* at 3. Sharon Pelache ("Pelache") signed the return receipt on the certified mail letter containing the Subpoena. *Id.* at 5. Ms. Pelache was not an employee of Centura but was instead employed by a temporary agency to fill in at Centura's front desk because the regular receptionist was out for the day. *Respondent's Ex. A: Decl. of Kimberly Kmentt* [#12-1] ¶ 3. In addition, Ms. Lucero had not been employed at Centura since August of 2012, and the Subpoena was never given to or served on her. *Id.* ¶¶ 2-6.

On or about November 29, 2012, Centura's counsel informed the EEOC that he had been out of the office when a copy of the Subpoena was sent to him, and that he believed that the original Subpoena had not been properly served on Ms. Lucero. *Attach. 25 to Petitioner's Ex. 1* [#3-26]. He also offered to arrange for acceptance of service of a new subpoena addressed to Kimberly Kmentt ("Kmentt"), the employee who replaced Ms. Lucero after Ms. Lucero left the company. The EEOC followed up on this correspondence in March of 2014. *Attach. 26 to Petitioner's Ex. 1* [#3-27].

## II. Analysis

**A.     Five-Day Period to Petition for Revocation or Modification**

Respondent does not contest the EEOC's authority to issue and serve administrative subpoenas. *Response* [#12] at 1.  As an initial matter, the EEOC asserts that "an employer served with an EEOC subpoena issued in an investigation of a charge filed under the ADA who does not intend to comply may petition the EEOC to revoke or modify the subpoena within five days after service of the subpoena." *Motion* [#3] at 7 (citing 29 U.S.C. § 161; 29 C.F.R. § 1601.16(b)(1)).  The EEOC argues that because Respondent never petitioned the EEOC to revoke or modify the Subpoena, and because Respondent does not raise any constitutional objections, the Subpoena must be enforced. *Motion* [#3] at 7.  However, the statutory and regulatory language is clear that service is a prerequisite to the five-day objection period.  29 U.S.C. § 161 ("Within five days after the service of a [subpoena] requiring the production of any evidence in his possession or under his control, such person may petition the Board to revoke . . . such [subpoena] . . . ."); 29 C.F.R. § 1601.16(b)(1) ("Any person served with a subpoena . .  shall petition . . . to seek its revocation or modification . . . within five days . . . after service of the subpoena.").  A logical reading of the regulation leads to the conclusion that the five-day objection period does not apply if a subpoena is not "served."  Hence, the propriety of service must be the starting point in analyzing whether the Subpoena may be enforced, and despite its failure to petition for revocation or modification of the Subpoena, Respondent may contest the Subpoena on the basis of improper service.  Accordingly, the next question presented to the Court is whether the Subpoena was properly served on Centura.

**B.     Standard Governing Service of the Subpoena**

The first question regarding service that the Court must address relates to the appropriate legal standard governing service of an administrative subpoena. The EEOC argues that it must comply only with the EEOC Compliance Manual (the "Compliance Manual" or the "Manual") regarding service of an administrative subpoena. *August 6, 2014 Hearing* [#13]. Respondent "disputes that proper service of process is governed by the EEOC's Compliance Manual," but offers no support for its position. *Response* [#12] at 4. In fact, Respondent concedes that it "was unable to find case law discussing proper service of administrative EEOC subpoenas." *Id.* at 2. Counsel for Respondent affirmed at the hearing that there appears to be no case law requiring an EEOC administrative subpoena to comply with the mandates for service of a subpoena under the Federal Rules of Civil Procedure. *August 6, 2014 Hearing* [#13] (further stating that case law regarding service of a subpoena under the Federal Rules of Civil Procedure was "instructive [and that] principles that apply [there] have application here if for no other reason than procedural due process reasons").

Unlike a regulation, an agency manual "is not necessarily entitled to the force and effect of law." *Aragon v. United States*, 146 F.3d 819, 824 (10th Cir. 1998). "This is particularly true if the agency did not intend the manual to be mandatory, but rather intended it as a guidance or advisory document." *Id.* In *Aragon,* the Tenth Circuit Court of Appeals found that a United States Air Force manual stating it was "intended for guidance" due to "the varied nature of industrial problems" included an "express qualification [that] heavily weigh[ed] against ruling the Manual prescribed mandatory directives." *Id.* at 824-25. In *Nelson v. United States*, __ F. Supp. 2d __, __, 2014 WL

486029 (D. Colo. Feb. 6, 2014), this Court recently held that the United States Air Force Academy's Trail Management Plan did not require any particular action with regard to the type of path at issue, and thus the Trail Management Plan was not mandatory and allowed officials discretion regarding implementation of its guidelines. *Id.*, 2014 WL 486029, at \*12. Similarly, in *WildEarth Guardians v. United States Fish and Wildlife Service*, 622 F. Supp. 2d 1155, 1164 (D. Utah Apr. 22, 2009), the Court found that a habitat conservation plan issued by the United States Fish and Wildlife Service which expressly stated that it provided "detailed but flexible guidelines" was not meant to have the force of law.

However, while an agency manual is not necessarily legally binding, "[w]here a government imposes a *specific mandatory* directive, conduct pursuant to the directive is not discretionary." *Roath v. United States*, No. 10-C-0228, 2012 WL 4718123, at \*2 (E.D. Wis. Sept. 28, 2012) (emphasis in original) (citing *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 535 (1988); *Aragon*, 146 F.3d at 824). The parties have provided to the Court only "Section 24: Subpoenas" of the EEOC's Compliance Manual. [#12-2]. Nothing in this submission indicates that compliance with the Manual's directives regarding service of administrative subpoenas is discretionary and intended only for guidance or advice. The statements in the Manual are generally imperative in nature, although some permissive/discretionary statements are included. *See, e.g.*, § 24.7 [#12-2] at 5 ("When the person subpoenaed is not the respondent or its agents, serve the subpoena on the person who is expected to comply. The subpoena may be served in person or by certified mail."). Thus, based on the lack of any legal authority requiring the EEOC to comply with any standard other than its own Compliance Manual, and based on the mandatory nature of the

Compliance Manual's directives,[2] the Court determines whether the EEOC properly served the Subpoena in accordance with the Manual.

## C.     Compliance Manual's Service Requirements

The Compliance Manual provides explicit instructions for completion of administrative subpoenas. Under § 24.6(b), "[w]hen evidence or access to evidence is required, enter [on the subpoena form] the name, title, and business address of the person who has custody or control of the documents or facilities. The person so named is the addressee." *Respondent's Ex. B* [#12-2] at 4. The EEOC followed this instruction, as there appears to be no dispute that Ms. Lucero was at one time the person who had custody or control of the documents sought by the EEOC. [#3-5, #3-8, #3-11, #3-14, #3-16]. At least as of August 2012, Ms. Lucero appears to have been the proper employee of Respondent on whom such requests should have been served. [#12-1] ¶ 6. However, counsel for Respondent informed the EEOC by a letter dated November 29, 2012 that Ms. Lucero left her employment with Respondent in August 2012. [#3-26]. Thus, in early November 2012 when service of the Subpoena was attempted, the EEOC reasonably believed that Ms. Lucero was the person to be served. However, despite that reasonable belief, it is undisputed that Ms. Lucero was not the person who had custody or control of the documents at the time when the Subpoena was served.

The EEOC argues that the Subpoena was addressed to Ms. Lucero in her official

---

[2] Citing to EEOC Order No. 915.001, 10/1/87, and EEOC Order No. 915.002, 5/3/91, Section 0:1001 of the Compliance Manual, which provides instruction on how to use the Manual, states: "EEOC local, area, and district offices cannot modify or deviate from commission-established guidance and procedures without first obtaining clearance and approval from the appropriate headquarters office." There is no indication here that any such approval was obtained in connection with this matter.

capacity and thus that it is irrelevant that she was no longer employed by Respondent, i.e., that her successor was properly served instead. *See, e.g.*, *EEOC's Response to Respondent's Supplemental Memorandum* [#19]. However, the EEOC's Compliance Manual does not allow for this strategy. The Compliance Manual states that a subpoena must have the "name, title, and business address of the person who has custody or control of the documents." § 24.6(b) [#12-2] at 4. The Compliance Manual then states "[t]he person so named is the addressee." *Id.* The Compliance Manual does *not* provide that any individual holding the stated title is the addressee, or that "the person so named *and/or titled* is the addressee." Only "[t]he person so *named* is the addressee." *Id.* (emphasis added). The person named in the Subpoena was Ms. Lucero. Pursuant to the plain language of § 24.6(b) of the Compliance Manual, Ms. Lucero's title is irrelevant for purposes of determining who the "addressee" is. The EEOC's argument that the "addressee" of the Subpoena was either Respondent or whoever succeeded Ms. Lucero in her position as Vice President-Employee Relations of Respondent is unsupported by the Manual.

The EEOC further argues that it completed corporate service on Respondent. Section 24.6(b) of the Compliance Manual states: "However, when the identity of the person who is to testify or who has custody or control of the evidence or facilities cannot be determined, use corporate service; that is, address the subpoena to the 'Chief Executive Officer, XYZ Organization' using the full legal name and address of the organization." [#12-2] at 4. Here, there is no dispute that the Subpoena was not directed to the Chief Executive Officer of Centura. [#12-1] ¶ 2. Under § 24.7, "[w]hen corporate service is employed, serve the subpoena on an appropriate high ranking official (see § 24.6 and [§

24.7](a) below)." [#12-2] at 5.  However, under § 24.6(b), the only "high ranking official" to whom a subpoena should be directed for corporate service is the Chief Executive Officer. [#12-2] at 4.  No other official is listed as permissible in § 24.6 or § 24.7.  *See* [#12-2] at 4-6.  Because Ms. Lucero was not the Chief Executive Officer, corporate service of the Subpoena was not accomplished either.

Section 24.7(a) of the Compliance Manual states that "[t]he test of good service is whether there is adequate evidence that *the person subpoenaed* has received notice of the subpoena (consult with the legal unit if in doubt about who is the appropriate agent for service of process)." [#12-2] at 5 (emphasis added).  The italicized language may refer to either the addressee or the entity from whom documents are sought.  Use of the term "person" favors reading the language to require evidence of notice to the addressee.  There is no dispute that Ms. Lucero did not receive notice of the Subpoena here.  Moreover, there is no evidence in the record that her successor received notice of the Subpoena in a timely manner.  *See generally Response* [#12] at 4-5.

"An elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  The Court does not here determine the precise level of notice required for attempted service of an EEOC administrative subpoena.  However, it is clear that the EEOC did not comply with its Compliance Manual in connection with the service of the Subpoena, and neither Ms. Lucero nor her successor apparently actually received it until long after its attempted service by the EEOC, if at all.  Moreover, the EEOC has been provided with the name of the proper person to serve. [#3-26].  Counsel for Respondent informed the EEOC by letter

as to who was "the appropriate agent for service of process" once he learned that the EEOC had attempted to serve Ms. Lucero to obtain documents. *Id.* Indeed, correcting the Subpoena and serving it on the appropriate person would have taken less effort, time, and money than bringing a federal court case in an attempt to enforce the original, improperly served Subpoena. Although the EEOC has not complied with the requirements to serve Respondent's proper document custodian, access to the information sought is not foreclosed. The EEOC may simply serve an amended subpoena on the correct person.

### III. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Motion [#2] is **DENIED**.

Dated: October 23, 2014

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge